THE STATE OF KANSAS, *on the relation of John N. Ives,* *Attorney General,* v. THE KANSAS CENTRAL RAILROAD COMPANY *et al.*

RAILROAD COMPANY—*Repairs*—*Recommendation of Railroad Commissioners.* Under the provisions of §5, chapter 124, Laws of 1883, (¶ 1328, Gen. Stat. of 1889,) an order or recommendation of the board of railroad commissioners of the state to a railroad company, requiring repairs to be made upon its road or track, to promote the security, convenience and accommodation of the public, is advisory only. Such an order or recommendation is not final or conclusive upon the railroad company or in the courts.

*Original Proceeding in Mandamus.*

ON the 20th of October, 1891, the State of Kansas, upon the relation of the attorney general, filed its written application in this court, supported by certain affidavits, praying for a peremptory writ of *mandamus* to compel the Kansas Central Railroad Company and the Union Pacific Railway Company to repair, at once, the Kansas Central railroad from Leavenworth to Miltonvale, by relaying the same with 56-pound steel rails, in accordance with an order of the board of railroad commissioners of the state of Kansas. On November 4, 1891, an alternative writ of *mandamus* was allowed and served upon the defendant companies, which recited, among other things:

"That the board of railroad commissioners of the state of Kansas having been advised of the condition of the Kansas Central railroad, and having made a careful examination and inspection of the same, on the 13th of May, 1891, found and determined that said railroad had been and was in an unsafe and dangerous condition for the transportation of persons and property over the same, by reason of the insufficiency, condition and weight of the iron rails in said tracks; that by reason of its condition, the train service in use on like railroads has been abandoned; and that, pursuant to said finding and determination, the said board made its order that the line of said railroad should be repaired from the city of Leavenworth to the town of Miltonvale, by the laying of new rails

32·—47 KAS.

of standard pattern, and of not less than a weight of 56 pounds to the lineal yard; that this order was mailed to the vice-president and general manager of the defendant, the Union Pacific Railway Company; that afterward, on June 9, 1891, said board again wrote said officers concerning said order; that afterward, on June 16, 1891, said officer was again informed of said order by telegram; that on the last day aforesaid, the said officer replied, in substance, that the whole matter had been submitted to those who owned the road, from whom said officer received his instruction; that on June 19, 1891, the said board informed said officer that immediate action on his part was expected; that on the 21st day of June, 1891, said officer replied to the said board that he had sent the correspondence to the New York office, where estimates were then being considered, together with his own recommendation in harmony with the demands of the said board; that on the 16th day of September, 1891, the vice-president and general manager of said defendant applied to said board for a modification of said order; that on the 18th day of September, 1891, the said officer of said defendant again asked for a modification of said order, and the said board again, on September 30, informed said officer that it would not recede from said order; that said railroad has not been maintained to meet the demands of public obligations; that it has been neglected; that the board further informed him that it would relieve itself of the responsibility to secure action which was then formally refused by said officer; and said officer was advised that the whole matter had been placed in the hands of the governor of the state of Kansas for his action, and that the governor of the state of Kansas, by his written direction to the attorney general, directed the institution of this suit."

On November 5, 1891, the Union Pacific Railway Company filed its motion to quash and set aside the alternative writ, for the reason that it did not state facts sufficient to entitle the plaintiff to the relief sought. This motion was heard on Friday, November 6, at the November session of the court for 1891.

The powers and duties of the board of railroad commissioners of the state, as prescribed by the statute, so far as necessary to be referred to in the determination of this case, are as follows:

¶ 1328. "Said commissioners shall have the general su-

pervision of all railroads in the state operated by steam, and all express companies, sleeping-car companies, and all other persons, companies or corporations doing business as common carriers in this state; and shall inquire into any neglect or violation of the laws of this state by any person, company or corporation engaged in the business of transportation of persons or property therein, or by the officers, agents or employés thereof; and shall also from time to time carefully examine and inspect the condition of each railroad in the state, and of its equipment, and the manner of its conduct and management, with reference to the public safety and convenience.   Whenever in the judgment of the railroad commissioners it shall appear that any railroad corporation or other transportation company fails, in any respect or particular, to comply with the terms of its charter or the laws of the state, or whenever in their judgment any repairs are necessary upon its road, or any addition to its rolling-stock, or any addition to or change of its stations or station-houses, or any change in its rates for transporting freight, or any change in the mode of operating its road and conducting its business, is reasonable and expedient in order to promote the security, convenience and accommodation of the public, said commissioners shall inform such corporation of the improvement and changes which they adjudge to be proper, by a notice thereof in writing, to be served by leaving a copy thereof, certified by the commissioners' secretary, with any station agent, clerk, treasurer, or any director of said corporation; and a report of the proceedings shall be included in the annual report of the commissioners to the governor.   Nothing in this section shall be construed as relieving any railroad company, or other transportation corporation, from their responsibility or liability for damage to person or property." (Laws of 1883, ch. 124, § 5.)

¶ 1352. "That whenever in the judgment of the board of railroad commissioners it is necessary to the convenience or accommodation of the public that two or more railroads that cross or run parallel with each other should connect at or near the point of crossing or places of business along such railroad for the transfer of cars from one road to another, the board may require the construction of necessary switch connection between such railroads at the points where deemed necessary, in the following manner: Said board of railroad commissioners shall serve upon the railroad companies whose roads it is deemed necessary to connect a certified copy of their finding

and decision, in which shall be stated the character of connections to be built, whose duty it shall then be to construct such switch connections within such time as the said board shall prescribe, and the expense of the same shall be borne equally by the companies whose roads so connect or run parallel. If one of the said companies shall build the whole of such switch, it may recover one-half of the cost of the same from the company whose duty it was to construct one-half of such switch." (Laws of 1886, ch. 133, § 1, as amended by Laws of 1889, ch. 193, § 1.)

¶ 1355. "It shall be the duty of the board of railroad commissioners, upon complaint and application by the mayor and council of any city or the trustee of any township in this state, requesting an order of said board to require any railroad company in this state to construct any depots, side-tracks, switches or other facilities at any point on the line of such railroad, for the convenience and safety of the public in the transaction of business with such railroad, and the interchange of business between connecting or parallel railroads at any station, town or city in this state, to investigate such complaint after giving proper notice to the railroad companies interested; and said commissioners after such examination shall make such orders as they deem necessary and proper in relation to the construction and maintenance of such depots, connections, switches, or side-tracks, as in the judgment of said board shall be necessary." (Laws of 1889, ch. 192, § 1.)

¶ 1356. "If complaint shall be made by any railroad company in this state against any other railroad company in this state on account of failure, neglect or refusal to comply with the provisions of section nine of an act entitled 'An act concerning railroads and other common carriers,' approved March 6, 1883, the board of railroad commissioners shall upon notice to said railroad company investigate such complaint, and thereupon make such order as in the opinion of said board shall be just and reasonable for the public interest, and may fix in such order a reasonable switching charge for any service required by such order, which switching charge shall be paid by the railroad company receiving the service, and shall not be added to the rate paid by any consignor or consignee interested in such shipment." (Laws of 1889, ch. 192, § 2.)

¶ 1357. "The board of railroad commissioners may enforce its orders for the erection and maintenance of depots, the construction of connections, side-tracks, and switches, and charges

for switching between connecting or parallel lines of railroad as hereinbefore provided for, as provided in the next section." (Laws of 1889, ch. 192, § 3.)

Section 4 of chapter 192, Laws of 1889, provides that for every neglect or refusal of any railroad company, corporation, receiver or person operating any railroad in this state to comply with any order of the board of railroad commissioners of this state, made in pursuance of the provisions of chapter 192, Laws of 1889, such corporation or person so neglecting or refusing shall forfeit to the state the sum of $100 for each and every day that any such order is neglected or disobeyed after the expiration of 30 days from the day of service of such order. (Gen. Stat. of 1889, ¶ 1358.)

*John N. Ives,* attorney general, and *J. G. Waters,* for plaintiff.

*A. L. Williams,* and *N. H. Loomis,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: The question for our consideration in this case is not what power the legislature of the state may delegate or confer upon the board of railroad commissioners, but what power is conferred by the existing statutes. It is contended upon the part of the state that the finding of the railroad commissioners of the 13th day of May, 1891, that the Kansas Central railroad "is in an unsafe and dangerous condition for the transportation of persons and property, by reason of the insufficient condition and weight of the iron rails in the tracks thereof," is final and conclusive upon the defendants and this court. Further, that the order of the commissioners requiring the Kansas Central railroad to be relaid with new rails of standard pattern, and of not less weight than 56 pounds to the lineal yard, is also final and conclusive; that, in proceedings in this court to compel a compliance with the order of the commissioners, the statute neither contemplates nor allows any issue to be made or inquiry had of the condition of the railroad examined by the commissioners, or

of the reasonableness of the order made by them. The defendants claim that the order of the commissioners, under the terms of the statute, is advisory only. If the finding of the commissioners and their order are final and conclusive, this court has no power to hear or determine any issue of fact, except upon the allegation that the defendants have refused to comply with the order for repairs. If the finding and order of the commissioners are final and conclusive, this court, upon a railroad company refusing a compliance therewith, must at once, upon proper application being made, register the order and enforce the same literally.

The power which is claimed by the commissioners to be conferred upon them, so far as this case is concerned, must be found, if found anywhere, in § 5, chapter 124, Laws of 1883. (Gen. Stat. of 1889, ¶ 1328.) The legislature has not conferred upon the commissioners by said statute the power claimed. There is nothing in the statute which states, or can be construed to state, that the orders of the commissioners concerning repairs upon a railroad shall be final or conclusive, or that the courts must carry out their determinations or judgments. Upon the other hand, the statute provides only that whenever in the judgment of the commissioners any repairs upon a railroad are demanded for the security, convenience and accommodation of the public, they shall inform the railroad corporation of the improvements and changes which they adjudge to be necessary, and then report their proceedings to the governor. Nowhere is it stated in the statute that the recommendations of the commissioners concerning repairs must be complied with *nolens volens* by the company; nor does the statute authorize the governor to carry into execution the order of the commissioners. As to the necessary repairs of a railroad, the finding and order of the commissioners, under the statute, are advisory only — nothing more. The order cannot be enforced by the commissioners; it cannot be enforced by the governor; and it cannot be enforced specifically by this or any other court. Under the statute, as existing, whenever an ac-

<div style="margin-left:2em; font-size:smaller">Railroad company—repairs—recommendation of railroad commissioners.</div>

tion is brought in any court to compel a railroad corporation to repair its tracks or operate its road in a particular way, for the security, convenience and accommodation of the public, the corporation is entitled to an opportunity to traverse its alleged violation of duty, and to have a judicial investigation of the charges made against it, under the forms provided for in the trial of other civil actions. Not only is the finding and order of the commissioners not an absolute finality, but the statute concerning repairs does not make them even *prima facie* evidence. When the courts are to decide such a case as this, the whole truth of the matter alleged or denied is subject to a judicial investigation. Each party is entitled to its day in court before a conclusive finding is made or a final order entered. The commissioners are not clothed with judicial functions. They have neither the powers of masters, referees, juries, or judges. Their findings are not like the findings of a master, referee, jury, or court. When performing duties under said § 5 of chapter 124, Laws of 1883, they may examine and decide what repairs are proper, and give notice thereof to the railroad corporation, and report their proceedings to the governor. The statute confers no other duty or power.

The persons first appointed as commissioners were Hon. James Humphrey, Hon. L. L. Turner, and Hon. Henry Hopkins. In the first report of the commissioners, their powers under said § 5 were very clearly and fully defined by them. They said:

"The commissioners, under this section, have no power to enforce an order. They can simply advise the company in fault of the changes desired or deemed necessary. To have invested the commission with the power to enforce its own orders, it would have been necessary to have changed the character of the board and the scope of its functions and powers. It would have been necessary to have given to the commission all the powers of a court of chancery, to be exercised within the scope of its assigned duties, with such ministerial officers attached to the board as are usual and necessary to such tribunals, to execute its injunctions and mandates. It would have ren-

dered it necessary to have instituted a formal investigation, upon proper complaint and notice to the company complained of, and the rendition of a formal judgment and decree upon the evidence which should be submitted to the board. Manifestly, in such case it would have been improper for the board to have acted upon knowledge and information gathered from personal observation, or the *ex parte* statements of individuals, as much so as it would be for regularly-organized courts to act judicially upon evidence which has never been disclosed to the opposite party to the suit. The supervisory powers of the commission would in such case extend only to such matters as should be formally brought before it by complaint, and no such complaint would be made until some one had become the suffering victim of some neglect, failure, or other violation of duty on the part of a railroad company. Thus the chief benefits which were intended to be secured by giving the commissioners general supervisory powers would be sacrificed by imposing upon them those limitations in the exercise of functions which are necessary to impress upon judicial decrees the weight and character of impartiality." (First Annual Report of Railroad Commissioners, 1883, p. 4.)

In 1888, the commissioners were Hon. Albert R. Greene, Hon. Almerin Gillett, and Hon. James Humphrey. They evidently did not understand that their orders were final or conclusive, and that the courts, under the existing statute, without a full investigation and hearing thereof, are required to enforce their orders. They said:

"The orders, decisions and recommendations of the board, upon the various matters which have come before it the past year, have in nearly all instances been complied with and carried out by the railroad companies affected by such decision or order. In one instance, however, the company affected by a decision of the board has demurred, and so far, we have been advised, has refused to comply with its requirements. . . . It is respectfully recommended that provision be made by statute for the enforcement, by appropriate remedy, in courts having jurisdiction, of the decisions and orders of the board." (Sixth Annual Report of Railroad Commissioners, 1888, pp. 45, 46.)

In compliance with the foregoing request, the legislature passed an act on the 2d of March, 1889, attempting to compel

the enforcement of the orders of the railroad commissioners for the erection and maintenance of depots, the construction of connections, side-tracks, switches, etc.; but the act of March 2, 1889, does not attempt to confer any additional power upon the commissioners or the courts in enforcing their orders concerning the repairs or the actual operation of railroads.

In 1890, the commissioners were Hon. James Humphrey, Hon. George T. Anthony, and Hon. Albert R. Greene. In their report they also asked for additional power. They said:

"It should by provided by law that the order of the railroad commissioners shall be the governing law of the railroad companies, to be obeyed and respected by them, until vacated by a competent judicial tribunal on appeal." (Eighth Annual Report of the Railroad Commissioners, 1890, p. 10.)

No additional power was conferred at the session of the legislature for 1891. Therefore, as before stated, the only act that it is necessary to construe in this case is § 5, chapter 124, Laws of 1883. (Gen. Stat. of 1889, ¶ 1328.) When the legislature of 1889 gave additional powers to the commissioners concerning railroad stations, connections, side-tracks, switches, etc., but refused to change the statute for the enforcement of the recommendations of the commissioners concerning the necessary repairs, etc., of railroad tracks, it is clearly evident that the members thereof did not think the order of the commissioners in such matter should be an absolute finality, or should be enforced without the ordinary judicial investigations in the courts. The counsel representing the state in this case, upon the hearing thereof, made a very able argument to establish that, within the police power, the state has ample authority to compel the repairs of any railroad, so that it may be operated safely for the public. This argument, although strong and ingenious, cannot be applied here, because the legislature has not, by statute, conferred, or attempted to confer, the power claimed, even if it had the authority so to do. It will be noticed, however, by the language of said § 5, that the power of the commissioners is as effective in matters relating to the convenience and accommodation of the public as to those hav-

ing reference to security or safety. In Minnesota, in 1887, the legislature granted by statute to the railroad commissioners of that state the power to fix the rates of charges for the transportation of property by railroad companies, and provided their orders should be final and conclusive. The statute was held by the supreme court of the United States in conflict with the constitution of the United States, and therefore void. (*Railroad Co. v. Minnesota*, 134 U. S. 418.)

It is an historical fact, well known by those who attended the session of the legislature of 1883, and by those acquainted with the proceedings of that body, that there was a bitter contention among its members as to what power should be conferred upon or delegated to the commissioners to be appointed under the act or bill then pending for adoption. A part of the members, under the lead of Hon. Eugene F. Ware and others, were favorable to the delegation to the commissioners and the courts full authority for the enforcement of their orders; others, and a majority, opposed the delegation of such power; and the result was that advisory action only on the part of the commissioners was provided for. The national interstate commerce act of February 4, 1887, differs widely from the act of 1883 of our legislature, in expressly providing for writs of *mandamus* to be issued out of the United States circuit courts to compel railroad companies to comply with the orders of the national commission, and also for punishing in such courts railroad companies for violating or neglecting to obey any lawful order or requirement of the national commission. (Vol. 1, Interstate Commerce Commission Reports, 665–671.) We understand that generally the recommendations of the state commissioners have been complied with by all of the railroad companies affected thereby, and if the road and track of the Kansas Central are in the dangerous condition reported by the commissioners, it is most unfortunate to the public that the corporation having the operation of the road has not long since carried out the requests of the commissioners, so as to put the road and track in a safe and secure condition for the transportation of freight and the carrying of passengers; but

when we are called upon to perform a judicial duty, we cannot go beyond the limits of our power as defined by the constitution and statutes of the state, however strong the necessity may be apparent for the immediate exercise of arbitrary control.

Without deciding other questions raised upon the argument, the motion to quash must be sustained, because the legislature has not provided, or attempted to provide, that the recommendations of the railroad commissioners concerning the repairs of railroads, their tracks, etc., are an absolute finality. The plaintiff will have leave to amend the alternative writ, if it so desires, by setting forth all allegations necessary of the dangerous condition of the track or road-bed of the Kansas Central Railroad Company; its refusal to operate its road safely or securely, and its neglect of duty, if any, in any other matters, and also to ask for such orders in the premises as may be deemed proper. Issues may be joined thereon, as in other *mandamus* cases, and an investigation will be judicially had of the truth of the matters in controversy. What power this court may lawfully exercise in compelling necessary repairs upon a railroad, or in requiring the safe operation of such a road, we leave for future consideration.

All the Justices concurring.