J. A. EDSON, *as Receiver, etc., Appellant,* v. THE CITY OF OLATHE, *Appellee.*

No. 16,202.

SYLLABUS BY THE COURT.

DAMAGES—*Liability of a City—Repeal of Franchise Ordinance.* A city is not liable in damages for the repeal of a street-railway-franchise ordinance which does not engage the city in any private proprietary capacity, nor for the conduct of its officers in publishing and subsequently enforcing the repealing ordinance.

Appeal from Johnson district court;. WINFIELD H. SHELDON, judge. Opinion filed December 11, 1909. Affirmed.

*A. F. Hunt, jr., F. R. Ogg, S. D. Scott,* and *S. T. Seaton,* for the appellant.

*C. L. Randall,* city attorney, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The railway company sued the city for damages following the repeal of an ordinance granting the use of the streets of the city for the construction and operation of a street and interurban railway. A demurrer was sustained to the petition, and the railway company, by its receiver, appeals.

After alleging the passage of the original ordinance, acceptance of its terms, and compliance with its conditions on the part of the plaintiff, the petition proceeds as follows:

"The plaintiff further avers that notwithstanding its rights in the premises the said defendant refused to permit said plaintiff to enter said city for the purpose of constructing and operating its line of railway as provided for in said ordinance, and to enjoy the franchise, rights and privileges by said ordinance conferred, and therein did on the 25th day of June, 1906, enact a certain ordinance repealing the ordinance hereinbefore mentioned of May 21, 1906, and from thence on did re-

fuse to allow the said plaintiff the enjoyment of its aforesaid franchise, and contract rights and privileges, and did refuse to approve plaintiff's bonds, plans and specifications and repudiated said contract, a copy of which ordinance of repeal is hereto attached and made a part hereof. Which said repealing ordinance was duly published in the Olathe *Republican-Tribune*, the official paper of said city."

The franchise ordinance designated the streets to be used, covered fully the subjects of construction, maintenance and operation, and prescribed many regulations intended to conserve the right of the general public to use the streets and in other respects to protect and promote the public welfare. It required that connection be made with the street railway system of Kansas City, Mo. Some of the proprietary rights of the city which would necessarily be affected by the exercise of the privileges granted were protected, but no independent, private, proprietary corporate object or advantage was sought to be obtained by means of the franchise, and the city assumed no obligation of a private proprietary nature. A right of repeal under certain circumstances was reserved, the railway company was required to give bond for the performance of conditions imposed and was required to file with the city clerk plans and specifications of construction work, to be approved by the city council before construction commenced.

The damages claimed were cost of condemnation proceedings, attorney fees, loss of profits, depreciation in the market value of bonds at the time on sale, and some other items.

Evidently the petition was prepared on the theory that the repeal of the franchise ordinance, and the consequent damage, created a cause of action against the city. The general statement that the city refused to permit the plaintiff to enter the city is limited by the specification as to how the refusal was accomplished— "and therein did on the 25th day of June, 1906, enact a certain ordinance repealing," etc., and the repealing

ordinance was of course the act of obstruction and repudiation actually relied on. In the principal brief the cause is argued as if the repeal of the franchise ordinance. occasioned the damage and furnished the foundation of the action. An attempt is made to fortify the argument in a reply brief, but in an addendum to the reply brief the position is abandoned altogether. The plaintiff now relies on the so-called ministerial act of publishing the repealing ordinance, the subsequent refusal of the city to approve its bonds, plans and specifications, the subsequent refusal to allow the plaintiff to enjoy its franchise, and the subsequent repudiation of the contract. These points will be noticed as if the theory of the petition really embraced them.

The statute requires all ordinances of cities of the second class, except those for the mere appropriation of money, to be published before they become effective. Enactment and publication combine to. make the law. They constitute separate stages of the process whereby municipal law comes into being, 'and whenever city officials act in a public, political, governmental capacity for the passage of an ordinance they act in the same capacity for the publication of it. City ordinances relating to matters of general public concern have the force and effect of law. (*Yount v. Denning,* 52 Kan. 629, 636.) The city is the delegated agent of the sovereignty to establish the law in the municipal territory, and the agency lasts until the end is attained. This is not a case involving simply the ministerial execution of work laid out by an ordinance after legislative discretion has ended. (*The City of Leavenworth v. Casey,* McCahon, 124, 1 Kan. [Dassler's ed.] 544, 550; *Bowden v. Kansas City,* 69 Kan. 587, 590.) While legislative discretion over the contents of the ordinance may have ended with the proceedings in the council chamber, the governmental function of promulgating public law did. not end until the. ordinance was published in due form. Therefore the city is under no more liability for

the conduct of its officers in publishing an ordinance, whereby it acquires the quality of law, than it is for the conduct of the same officers in considering the ordinance section by section or in voting upon it.

Concerning the other matters supposed to entail liability—refusal to approve bonds, etc., after the repeal, re-repudiation of the franchise and re-refusal to permit it to be enjoyed—the question is, In what capacity was the city acting? If it acted as an agent of the sovereignty upon a subject of general public concern, dissociated from any private, proprietary corporate right, it shares the sovereign's immunity from suit.

In granting the franchise the city acted in a purely governmental capacity. It sought to promote the general welfare, and nothing else. It had no private, proprietary end in view, obtained no advantages of that character, and assumed no obligations of that kind. The repealing ordinance dealt with the same subject— the general welfare—and nothing else. The subsequent measures taken by the city pursuant to the repealing ordinance and by way of its enforcement belong to the same category. They were purely governmental measures, taken by the city as the agent of the state for the promotion of the public good, and had no private corporate aspect whatever. What the city officials did was to prevent the streets from being invaded and permanently occupied by the plaintiff with its ties and rails and wires and poles and moving cars, to the detriment of the traveling public. It may be that the repealing ordinance was void. It may be that the conduct of the city confirmatory of the repeal was all wrong, oppressive and injurious to the plaintiff. But since the mayor and council and other officials, if any, acted not for the peculiar private advantage of the corporation but as representatives of the state in a matter of general public interest, the city is no more liable in damages for what they did than the state itself.

"Acts done by the mayor and aldermen, or the mayor

alone, to keep the streets clear of obstructions, are acts done by them as public officers, and not as agents of the city, and for such acts the city was not liable to be sued." (*Haskell v. New Bedford*, 108 Mass. 208, 211.)

The distinction between the governmental and proprietary functions of municipal corporations and their officers has been stated and acted upon so many times that authorities are superfluous. Some of the numerous Kansas cases are the following: *The State, ex rel., v. Hunter*, 38 Kan. 578; *Peters v. City of Lindsborg*, 40 Kan. 654; *La Clef v. City of Concordia*, 41 Kan. 323; *City of Caldwell v. Prunelle*, 57 Kan. 511; *The State v. Water Co.*, 61 Kan. 547; *Freeman v. Chanute*, 63 Kan. 573; *Water Co. v. Cherryvale*, 65 Kan. 219; *Asher v. Water Co.*, 66 Kan. 496; *Bowden v. Kansas City*, 69 Kan. 587.

The following statement appears in the plaintiff's brief:

"That in granting franchises, authorizing water, gas, telephone, railroad and other companies to set poles, lay pipes and tracks, and otherwise use and occupy its streets, municipal corporations exercise, not legislative or governmental powers, but quasi-private power conferred by law, and in such matters are governed by the same rules that apply to an individual or a private corporation, is settled law in this state. *The State v. Water Co.*, 61 Kan. 547, 561. *Water Co. v. Cherryvale*, 65 Kan. 219, 228."

The cases cited do not so hold, and such is not the law. In the case of *The State v. Water Co.*, 61 Kan. 547, the city of Topeka rented from the water company to which a franchise was granted 150 hydrants and agreed to pay rent for them in the sum of $700 per year. The water company further agreed to establish any additional hydrants the city required, for which the city agreed to pay $50 per year each. It was further provided that the company would erect ten hydrants on each mile of extensions of pipe, for which the city should pay $500 per annum. After the number of hy-

drants reached 300 the city was to have water for additional fire hydrants free on paying the cost of the hydrants and connections.   In view of the purely proprietary features of the ordinance the court said:

"In the making of said contracts evidenced by ordinances the city was not exercising legislative or governmental powers, but quasi-private power conferred by law, and in such matters it could exercise its business affairs governed by the same rules as apply to an individual or a private corporation." (Page 561.)

In the case of *Water Co. v. Cherryvale,* 65 Kan. 219, the city, besides granting the water company a franchise, rented forty-five hydrants at an annual rental of $2700 and reserved the right to buy the plant at the expiration of a stated term.   The litigation arose out of the business features of the ordinance, and the court said:   "In the making of such contract the city exercised quasi-private power and was governed by the rules applicable to an individual or a private corporation." (Page 228.)

Cases from other jurisdictions are cited with the same lack of discrimination to sustain the proposition advanced in the brief and they need not be reviewed at length.   The case of *State ex rel. v. Gates,* 190 Mo. 540, is perhaps an exception, and being exceptional is not controlling.   Likewise, in the cases cited to show pecuniary liability on the part of cities for breaches of franchise ordinances, business affairs and not governmental conduct furnished the ground of action.   A city may grant water, gas, electric-light, telephone and street-railway franchises and utilize none but its governmental powers, as the city of Olathe did in this case; and so long as city officials confine themselves to the exercise of such powers and do not involve the corporation on its proprietary side it will not be held responsible in damages for misuser.

The plaintiff says the enforcement of the repealing ordinance deprives it of property without due process of law and consequently the remedy lies in an action

for damages. The premise may be granted without stopping to analyze it, for the conclusion does not follow. The mayor and council were not acting as private corporate agents, but as public officials clothed with delegated sovereign authority, and the remedy was to institute appropriate proceedings to restrain them from executing the repealing ordinance, and so from interfering with the plaintiff's enjoyment of its franchise.

The plaintiff seeks to evade the principle involved by giving a name to the violated obligation. It is said the duty not to deprive the plaintiff of its franchise was an "imposed" duty, just as the publishing of the repealing ordinance was called a "ministerial" act. The duty not to impair the obligation of the contract resulting from the acceptance of the franchise by repealing the franchise ordinance might as well be called an "imposed" duty, but the plaintiff has conceded that reparation for its breach does not lie in damages. The reason for nonliability is the same in both cases. Imposed duties for the neglect of which the city may be liable are those which are superadded to merely governmental functions, like the special, private corporate duty to maintain streets in a safe condition for public travel (*Gould v. City of Topeka*, 32 Kan. 485), or the special, private corporate duty to maintain and manage corporate property so that city employees shall have safe places in which to work (*Bowden v. Kansas City*, 69 Kan. 587). The constitutional mandates invoked came to the city officials merely as rules to be observed in the performance of their governmental duties, and not as special increments to the private corporate duties of the municipality.

In the reply brief the argument is advanced for the first time that on the face of the petition there is no legitimate excuse for the conduct of the city, and hence the mayor and council acted arbitrarily and in bad faith and so rendered the city liable in damages. Here

again the theory of the petition is abandoned, but the interpretation proposed may be conceded without question, for the conclusion does not follow. If the city officials acted in bad faith the city might be enjoined (*Paola v. Wentz,* 79 Kan. 148), but it is quite elementary that such officials could not, by departing from official probity and duty in the field of governmental activity, convert themselves into private corporate agents with capacity to bind the corporation in pecuniary damages.

The judgment of the district court is affirmed.