THE STATE OF KANSAS, *ex rel. John S. Dawson, as Attorney for the Board of Railroad Commissioners of the State of Kansas, Plaintiff*, v. THE CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, AND THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Defendants.*

No. 16,919.

SYLLABUS BY THE COURT.

1. RAILROAD COMMISSIONERS — *Mandamus — Parties—Attorney.* The attorney for the board of railroad commissioners is the proper officer to bring an action in the name of the state to compel compliance with an order of the board.

2. ——— *Order—Action to Compel Obedience Not Prematurely Brought.* An order was made requiring certain railroad companies to make a connection between their tracks on or before ninety days from its date. Three days thereafter an action was brought to compel the companies to obey the order, the petition substantially charging a predetermination not to obey. One of the defendants answered that the other would not obey and that obedience on its own part was therefore practically impossible. Each contested the validity and reasonableness of the order. *Held*, that the action was not premature.

3. ——— *Railroad Connections—Properly Located.* Complaints by the mayors and councils of certain cities and petitions from many persons and firms requested the board to order a connection at or near a certain city, it being set forth that at such place and at another seven and one-half miles east of it the tracks were close together. One petition (not signed by mayor and council of any city or town) prayed for the connection at or near the place first referred to or at some convenient place. These complaints and petitions asserted that a large territory traversed by the parallel roads needed a connection in order to give such territory better shipping facilities. *Held*, that after notice, answers and hearing, the board rightfully located the connection at the second place referred to.

4. ——— *Order—Prima Facie Reasonable.* Such order being *prima facie* reasonable, it· was not shown to be unreasonable by the fact that such connection would cost a certain sum, in the absence of a showing as to increased or diminished income or profits as a result.

5. ——— *Order—Power of Board.* The tracks were about 162

feet apart where the connection was ordered. *Held*, that the board had power to order the connection made at such place.

Original proceeding in mandamus. Opinion filed November 11, 1911. Peremptory writ allowed.

*John S. Dawson*, attorney-general, and *John Marshall*, attorney for the Board of Railroad Commissioners, for the plaintiff; *E. H. Hogueland*, of counsel.

*M. A. Low, Paul E. Walker, J. D. McFarland, Arthur R. Wells*, and *James E. Kelby*, for the defendants.

The opinion of the court was delivered by

WEST, J.: Early in 1910 complaints by the mayor and council of Oberlin, the mayor and council of Norcatur, and petitions signed by various persons and firms were presented to the board of railroad commissioners praying that a switch connection be made between the tracks of the defendant roads at Norton, Kan., one complaint suggesting that it be located at or near Norton and another, signed by persons and firms, that it be ordered placed at Norton or some convenient place. These documents set forth at length the alleged needs of a large territory in northwestern Kansas traversed by the roads and the supposed necessity for a connection so that better shipping facilities might be enjoyed by the territory referred to. In the Burlington's answer to the complaints it was alleged, among other things, that the amount of business which would be handled would be insufficient to warrant the board in ordering the connection. Similar contention was made in the answer of the Rock Island. After notice given hearing was had at Norton on February 9, and two days thereafter the board at Topeka ordered the connection made on or before ninety days, at Calvert, seven and one-half miles east of Norton. The findings and order of the board recite that upon a hearing had, and after the introduction of evidence and argument of the counsel, it was found that the amount of business afforded

the respondent companies and the existing commercial conditions with reference to the prompt movement of freight traffic warranted the respondents in constructing and maintaining a connection at Calvert, Kan., for the purpose of accommodating the public in the interchange of freight traffic upon the lines of the companies. The respondents were ordered to make such connection on or before ninety days from February 11. Among the files of the board was found a letter to counsel for the Rock Island from its general superintendent suggesting Calvert as preferable to Norton and giving reasons why he deemed this location less objectionable than Norton. February 14, the attorney for the board brought this action to compel compliance with the order, setting forth that the Burlington did not intend to obey the order unless compelled to, that the plaintiff believed and therefore charged that the Rock Island would be disposed to obey but could not well do so without like obedience on the part of the Burlington, that while the work would take but about two or three days the plaintiff believed and therefore charged that both defendants would disregard the order. Motions to quash were filed and overruled. Each defendant answered setting forth many alleged reasons why the writ should not issue, the Burlington specially challenging the right of the board to order the connection at Calvert upon a complaint naming Norton. The Rock Island answered similarly in many respects, and also alleged that the Burlington would refuse to obey the order and would refuse to permit the Rock Island switch, if built, to be connected with the Burlington track. The record shows that in March the Burlington sued in federal court to enjoin the board from enforcing the order. Testimony was taken showing that the connection would cost from $1400 to $2000 or thereabouts, and the maintenance of a station and the employment of an agent would cost from $850 to $1000 a year. It is conceded that each road had an

agent at Norton and that neither had one at Calvert. It is shown that the tracks at Calvert are about 162 feet apart. It was stipulated that when the action was begun neither defendant had complied or attempted to comply with the order.

It is urged that the attorney for the board had no authority to maintain the action in the name of the state, and that such right rests alone with the attorney-general. Section 7182 of the General Statutes of 1909 (Laws 1907, ch. 268, § 11) makes it the duty of the attorney for the board of railroad commissioners "to prosecute and defend all suits and proceedings in behalf of the state, in the name of the state, in connection with the acts of the said board." Section 7228 of the General Statutes of 1909 (Laws 1907, ch. 268, § 8) also indicates an intention on the part of the legislature to authorize such action to be brought by the attorney for the board, and we hold that this action was brought by the proper officer.

The action is said to have been prematurely brought for the reason that the defendants had eighty-seven days remaining in which to comply, and that hence it was impossible for them to have already failed to obey. Section 716 of the code provides that the alternative writ must state concisely the facts, "showing the obligation of the defendant to perform the act, and his omission to perform it." Here the obligation was to perform within ninety days, and it is argued that until the expiration of that time there could not be an omission to perform the required duty. But the allegations of the petition fairly showed a present determination not to perform, and the defendants expressed no willingness to obey the order when sued, but contested its validity, and under the circumstances the action was not premature. (*C. K. & W. Rld. Co. v. Comm'rs of Chase Co.,* 49 Kan. 399, 414, 30 Pac. 456.)

In *The State, ex rel. Price, v. Carney and others,* 3 Kan. 88, it was said, in effect, that even an alternative

writ of mandamus ought not to be issued before the expiration of the time allowed by law for the performance of the act sought to be compelled. The language there used was too broad to serve as a general rule, although it may have been suitable to the facts of that case. There the proceedings were finally disposed of before the time for action allowed by the statute had expired. The same is true of the only case in which the Price-Carney case has been followed upon this proposition. (*The State ex rel. v. Wyandotte*, 4 Kan. 430.) The alternative writ, although nominally process of the court, is essentially a pleading—the plaintiff's petition. It really has no greater effect than a rule to show cause. So long as the writ is not made peremptory the defendant is not required to act, and he can not be seriously prejudiced by being called upon to show upon what theory he justifies his course if he has in fact no intention of performing the act demanded. Of a similar question it was said in *State, ex rel. Howells, v. Metcalf*, 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331:

[The plaintiff] "having made his demand, concerning which no doubt exists in this case, if the auditor [the defendant] did not express a willingness to comply therewith, it was proper to institute this proceeding, when, if defendant intended to comply with the demand, he might have disclosed such intention and have avoided any judgment for disbursements. But having answered and contested the relator's right, he can not be heard to say that he would or might have complied with the relator's demand." (p. 416.)

In the present case the ninety days allowed by the statute for compliance with the order of the board of railroad commissioners has now long since passed, and the defendants still refuse performance, and undertake to justify their course by the contention that the order is invalid. A peremptory writ commanding such compliance at this time ought not to be withheld on the ground that when the matter was first brought to the attention of the court it was still possible for the de-

fendants to obey the order within the statutory period.

Even an ordinary civil action brought before the plaintiff's right has fully matured may be proceeded with, in the discretion of the court, upon the filing of a supplemental pleading. (*Smith v. Smith,* 22 Kan. 699, 703; *King v. Hyatt,* 51 Kan. 504, 32 Pac. 1105.) And an action for damages for breach of contract may be maintained before the arrival of the time for its performance, where its obligation is denied. (*Caley v. Mills,* 79 Kan. 418, 100 Pac. 69.) Mandamus is a special remedy, somewhat summary in character. In a clear case a peremptory writ may issue in the first instance. Often the benefits of an act will be lessened or lost unless it is performed by the stated time, and there can be no opportunity for the full presentation and consideration of the legal questions involved unless the action of a court is invoked before that time has arrived.

The statute under which the board apparently acted (Gen. Stat. 1909, § 7195, Laws 1901, ch. 286, § 17) provides that upon complaint and application by the mayor and council of any city, or the trustee of any township, requesting an order to require any railroad company to construct any depots, sidetracks, switches or other facilities at any point on the line of such railroad, the board, after notice and investigation or examination, shall make such orders as it shall deem necessary and proper in relation to the construction and maintenance of such depots, connections, switches or sidetracks as in the judgment of the board shall be necessary. Section 7191 (Laws 1901, ch. 286, § 13) has more specific relation to connecting tracks of different roads, and provides for an order without previous notice or hearing, a certified copy of the board's findings and decision to be served upon the companies whose roads it is deemed necessary to connect. The complaints and petitions to which the defendants answered sufficiently advised them that the hearing was

not to be restricted to one specific point. The one from Oberlin and Norcatur states that at Calvert they are very close to each other, and that the same is true at various points along the line of the roads. The whole matter appeared as an attempt by the cities and citizens of a stretch of country traversed by the two roads to secure a connection somewhere, preferably at or near Norton. The complaint, therefore, that the connection was wrongfully located at Calvert, on a notice for Norton, is not substantial.

The argument that the *prima facie* reasonableness of the order is destroyed because it departs from the place requested is not meritorious.

It is urged that the order is unreasonable because it will require the cars of the Burlington to go beyond its own rails without provision for their return, and that it is unreasonable because it will require an agent at Calvert. Section 7237 of the General Statutes of 1909 (Laws 1905, ch. 351, § 4) makes the order *prima facie* evidence as to every fact found, which includes the finding that the business afforded the roads warranted the connection, and *prima facie* reasonable and just. We find nothing in the evidence sufficient to overcome this presumptive reasonableness, the evidence going mainly to the cost of the connection and showing nothing as to whether the income and profits would be increased or diminished.

Again, it is suggested that the statute does not contemplate that the city of Oberlin shall by complaint of its mayor and council affect conditions many miles away. But the manifest object of the statute is to provide better shipping facilities for regions needing them, and the cities and villages mentioned in the complaints and petitions are all within a territory deemed by the board to be entitled to the relief prayed for, and the order in effect, if not in terms, includes a finding to this effect.

The contention that the order directly affects interstate commerce is without support in the evidence, and

such result can not be assumed or reached by mere inference.

Finally, it is said that no duty arising out of their charters rests upon these companies to build new lines of road, long or short, and that the power here sought to be enforced on the part of the board would, if sustained, mean that these defendants might be compelled to build new lines into regions wherever the board deemed it of advantage to the inhabitants. Not going beyond the case in hand, the matter involved here, and the one we decide, is that the order requiring these roads, the centers of whose tracks are about 162 feet apart at the place in question, to connect such tracks is within the power of the board and presumptively reasonable.

The defendants having shown no good cause why they have not complied with the order, the peremptory writ is allowed.

WEST, J. (dissenting) : The duty and the time were coextensive. It was held in *The State, ex rel. Price, v. Carney and others,* 3 Kan. 88, that no previous threat or predetermination not to perform a legal duty can amount to a fault or omission, even though the showing be sufficient to convince the court that the respondents will omit to perform their duty. This was followed in *The State ex rel. v. Wyandotte,* 4 Kan. 430, in *Dobbs v. Stauffer,* 24 Kan. 127, and quoted with approval in *Rosenthal v. State Board of Canvassers,* 50 Kan. 129, 32 Pac. 129, and is in accord with the mandatory requirement of the statute. A present omission to do a future duty is a legal impossibility. The first time when it could be definitely known that the order had been disobeyed was nearly ninety days in the future, and I think an action before that time must have been premature.

I dissent from the second paragraph of the syllabus and the corresponding portion of the opinion.