THE CITY OF EMPORIA, *Plaintiff*, V. THE ATCHISON, TO
PEKA & SANTA FE RAILWAY COMPANY, *Defendant*.

No. 18,421.

SYLLABUS BY THE COURT.

1. MANDAMUS—*Opening City Street—Power of City is Legislative*. The courts have no general supervisory power over the
policy of municipal legislation. The extent to which the welfare of a city and of the traveling public will be promoted by
opening a city street through a railway embankment which
wrongfully obstructs it, leaving the railway tracks upon a
viaduct, is not a judicial question. The power of the city over
the subject is legislative, and the courts can interfere in such
cases only because of some constitutional impediment or lack
of legislative authority on the part of the city, or because
the conduct of the city is so arbitrary, capricious, unreasonable and subversive of private right as to indicate an abuse
rather than a *bona fide* exercise of power.

2. PLEADINGS—*For Writ of Mandamus—Held Sufficient*. The
pleadings examined and held to present no valid objections to
the enforcement of an ordinance requiring the defendant to
open a street which it obstructs in the manner stated, by the
construction of a subway under its tracks.

Original proceeding in mandamus. Opinion filed
January 11, 1913. Peremptory writ allowed.

*Edwin S. Waterbury*, city attorney, and *Ferry, Doran
& Dean*, of Topeka, for the plaintiff.

*William R. Smith,* *Owen J. Wood*, and *Alfred A.
Scott*, all of Topeka, for the defendant.

The opinion of the court was delivered by

BURCH, J.: The city of Emporia asks for a peremptory writ of mandamus against the defendant in aid of
an ordinance to open one of the streets of the city.

The petition states the plaintiff's case. The answer
admits certain allegations of the petition, contains a
general denial and alleges matter which it is claimed
renders the ordinance void. The plaintiff moves for

judgment on the pleadings. Consequently only the un-contested portions of the petition and the facts stated in the answer can be considered.

The passage of the ordinance and the physical con-ditions described in the ordinance itself are not dis-puted. The ordinance reads as follows:

### "AN ORDINANCE

"To open Congress street through Third avenue as a public highway for common travel.

"*Be it Ordained by the Board of Commissioners of the City of Emporia, Kansas:*

"Section 1. Congress street in said city shall be opened for ordinary travel as a street through its in-tersection of Third avenue, and made available as a public highway, by the removal therefrom of so much of the earth embankment, which supports the tracks and switches of the railroad, known as the Atchison, Topeka & Santa Fe Railroad, as now constitutes an obstruction to such use of said street at said intersec-tion. Such obstruction shall, by the corporation operat-ing said railroad, be removed and cleared away from the north side to the south side of said avenue to a width of not less than thirty feet, east and west, and the opening, tunnel, or subway, for the passage of said street through said avenue shall at no place be less then twelve feet in height above the grades provided for said intersection in the ordinance of said city passed on the 25th day of April, A. D. 1912, entitled, 'An ordi-nance to change and establish grades at certain points on Congress street and State street and other adjacent streets and contiguous places between Fourth avenue and South avenue.

"Sec. 2. The work of providing a support of the tracks, switches and trains of said railroad over said intersection of street and avenue other than said earth embankment which is now such obstacle to public travel, and of making such opening, tunnel, subway or passageway for Congress street through Third ave-nue at the aforesaid grades, shall be commenced and vigorously prosecuted by said Railroad corporation, and shall be so far completed on or before the 1st day of September, A. D. 1912, as to be ready for the con-struction, pavement and improvement of said Congress

street through Third avenue as such highway of common travel at that time. Approved and passed this 30th day of April, A. D. 1912."

It will be observed that the ordinance is not one to compel the defendant to build a subway at a crossing used in common with the public. The defendant blockades Congress street with an embankment, and the city merely desires that this street be opened for travel by the removal of the embankment, leaving the railway upon a viaduct. It is claimed that the city is without lawful power to require the defendant to proceed in the manner proposed.

It is elementary that the power in question is legislative in character, and that the legislature may confer authority upon the municipality to exercise it instead of doing so directly. The legislature has granted the city express power to open, widen, extend and improve streets, avenues, alleys and lanes (Gen. Stat. 1909, §§ 1374, 1399), to prevent encroachments upon such thoroughfares (§ 1400) and to regulate crossings of railway tracks, and make provisions to prevent accidents at such crossings (§ 1409). Besides this, the statutes permitting the defendant to construct its road across Congress street require the restoration of the street to such a state that its usefulness shall not be materially impaired. (Laws 1859, ch. 47; Gen. Stat. 1868, ch. 23, § 47.) Therefore it required no ordinance to create the obligation to open Congress street for public travel, and the city is clearly suffering from no lack of statutory authority to prescribe by ordinance the conditions under which the obligation shall be discharged.

The defendant claims the ordinance is unreasonable, unjust and confiscatory for the following reasons: The defendant's general manager has been conferring with the mayor and commissioners of the city, with the commercial club, and with a large number of citizens interested in the welfare of the city, and in such con-

ferences the opinion almost unanimously expressed was that a subway should be constructed at State street, one block west of Congress street. Such a subway would accommodate the street railway, as the proposed opening of Congress street would not, and the defendant is disposed to consider joining with the street railway in constructing a subway at the logical place on State street. The construction of a subway on Congress street would accommodate but few people and would be of no great value to the city of Emporia and its inhabitants. The construction of the proposed subway would involve an expenditure by the railway company of more than $10,000, which is entirely disproportionate to the benefits accruing to the city therefrom.

Streets are intended for the use of the public at large as well as for the benefit of residents upon them and other inhabitants of the city. The extent to which the growth, welfare and prosperity of the city and the safety and convenience of the traveling public will be promoted by the proposed improvement is not a judicial question. The duty to conserve the public welfare in the premises is vested in the mayor and commissioners of Emporia. Their power is legislative, and discretionary in the legal sense. The commercial club and the citizens with whom the defendant's general manager conferred are not charged with official responsibility in the matter, and the court is not permitted to substitute their judgment or its own judgment for that of the governing body of the city. The courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a *bona fide* exercise of power. These prin-

ciples are all too well understood to need bolstering by citations of authority.

There is no charge in the answer that the mayor and commissioners are actuated by malice or bad faith, and it is conceded by the defendant that some public benefit would result from opening the street. It is not unreasonable to require a barricade maintained in violation of law, and prohibiting all use of the street, to be removed for the benefit of even a minor portion of the traveling public. The natural result of the removal of the obnoxious fill down to the established grade of the street is an overhead crossing, and the details of the proposed plan for the crossing are not criticised. The interests of the street railway located upon another street are not material. The defendant had no right to appropriate the street to its exclusive private use. It should have secured a vacation, or, failing in that, should not have impaired, materially, its usefulness. It is now called upon merely to obviate in a reasonable and practicable way the consequences of its own wrong, and consequently is not in a position to complain of the cost.

It is said that the city has made no provision for the removal of a sewer which forms an obstacle to the construction of the subway, and the case is cited in which a change of grade by ordinance was a condition precedent to the building of a viaduct. (*The State v. Mo. Pac. Rly. Co.*, 33 Kan. 176, 5 Pac. 772.) In this case a sewer ordinance is not a prerequisite, and it may be presumed that the city will take care of the sewer when the defendant's excavation reaches it, should a sewer exist, which the city denies. It is also said that the time limited by the ordinance for the construction of the subway has elapsed, and consequently that the ordinance has spent its force. The ordinance merely fixed a reasonable time for doing the work, after which the defendant, in case of nonperformance, would be in default and subject to compulsory process.

The various objections to the ordinance are summed up in support of an allegation that the defendant is deprived of property without due process of law, and is denied the equal protection of the laws, contrary to the constitution of the United States and the amendments thereto. For the reasons already stated this contention is overruled.

The peremptory writ is allowed.