No. 20,015.

THE WICHITA WATER COMPANY, *Appellant,* v. THE CITY OF WICHITA, *Appellee.*

SYLLABUS BY THE COURT.

1. ACTION—*Services and Materials—Statute of Limitations.* It is too late under the statute of limitations to begin an action for services and materials when three years and two months have elapsed since the services were performed and the materials furnished before the action is begun.

2. CITIES—*Power of City Commissioners to Incur Obligations Binding City.* A city commissioner has no power to bind a city to pay for services and materials, nor does the written acknowledgment of the mayor as to the justice of the claim amount to a legal ratification of the promise of the comissioner.

3. SAME. A city can only make a binding contract by formal action on the part of the city government, where all its members have had a reasonable opportunity to consider and vote thereon, and the obligation is only binding when it receives a majority vote at a lawful session.

4. CITY—*Power to Direct Relocation of Water Mains—Expenses Thereof.* A city of the first class has power to make reasonable orders directing a water company to relocate its water mains and hydrants to conform to the establishment of another and later public utility; and the exercise of such power is governmental and the city is not liable for the expenses incurred by the water company in making such changes in obedience to the city's commands.

5. SAME—*Purposes for which City May Use Water under City Ordinance.* The right of a city to use water for flushing wagons is not included in an ordinance providing that the city may use the hydrants to flush its sewers and gutters with the restriction that not more than two hydrants shall be "opened at any one time, nor oftener than twice in any one week, nor longer than two hours at any one time, nor discharge through any orifice greater than one and one-half inches."

6. SAME. Where an old ordinance prescribes the method whereby the city may flush its sewers and gutters, the question whether the city must pay for any water used in flushing sewers and gutters in a more modern and efficient manner depends upon whether more water is used by the later method.

7. ACTION AGAINST CITY—*Taxpayer Not Disqualified as Juror.* In an action where a money judgment is demanded against a city, no ground of peremptory challenge is established by showing merely that a challenged juror is a taxpayer of the city. Older decisions to the contrary no longer control since the enactment of chapter 236 of the Laws of 1913.

Appeal from Sedgwick district court, division No. 2; THORN-
TON W. SARGENT, judge.    Opinion filed June 10, 1916.    Af-
firmed.

*David Smyth,* and *J. W. Smyth,* both of Wichita, for the ap-
pellant.

*James Conly,* and *Robert C. Foulston,* both of Wichita, for
the appellee.

The opinion of the court was delivered by

DAWSON, J.: The Wichita Water Company sued the city of
Wichita on three counts, (*a*) for labor and materials used in
protecting a bridge and one of its approaches which were
threatened by a flood in January, 1910; (*b*) for water used in
wagons for flushing and sprinkling the streets; and (*c*) for
expenses incurred in changing water mains and hydrants to
conform to the grades and elevations of the new union depot
in Wichita.

A demurrer to the evidence was sustained as to the first and
third causes of action.    The water company was given judg-
ment for $75 and interest for the water used by the city for
sprinkling the streets, but received nothing for water used in
flushing the streets.    From this result it appeals.

1. Was the demurrer to the evidence properly sustained as to
the first count.    The evidence showed that on January 14, 1910,
a flood on the Little Arkansas river threatened the destruction
of the Central avenue bridge in Wichita and its eastern ap-
proach and threatened to inundate the neighboring part of the
city.    One of the members of the city government, the com-
missioner of streets and public improvements, requested the
plaintiff's assistant superintendent to use its men and teams
and to secure additional help and material to protect the bridge
and this commissioner agreed that the city would pay these
expenses.    The city did not pay.    On February 4, 1913, the
mayor wrote a letter to the plaintiff saying that he thought
that there was some merit in plaintiff's claim for protecting
the river bank and bridge, admitted that some money was due
thereon, but that he could not ascertain the amount and sug-
gested that the plaintiff bring an action in court to determine
the matter.    This action was filed on March 15, 1913.    This

17—98 KAN.

was about three years and two months after the services were rendered and after the materials were furnished. The claim was therefore barred by the statute of limitations. (Civ. Code, § 17, subdiv. 2.) Moreover, the promise of one commissioner could not bind the city. His promise on behalf of the city was unenforceable, unless this commissioner, in compliance with his promise, had taken up the matter with the city government and had formally secured its ratification. (28 Cyc. 646.) This holds true, also, as to the mayor's acknowledgment that "some money" was due on "the river bank claim." The mayor could not give validity to a claim by acknowledging its justice. (28 Cyc. 647.) For that matter, if every member of the city government, acting independently and not in their organized capacity as the city commission, had said or done the same, no contract, no legal obligation would have followed. (*Root v. Topeka*, 63 Kan. 129, 131, 65 Pac. 233; 28 Cyc. 643, 644.) The statutes prescribe the methods by which contracts with a city are to be made. (Gen. Stat. 1909, §§ 9037, subdiv. 4, 1234, 1237, 1294, 1298. See generally Gen. Stat. 1909, §§ 1213-1218.)

While there is no escape from the foregoing proposition, we are not unmindful that in time of flood or other disaster threatening the welfare of a city, it may be imperatively necessary that some official take the initiative and do what ought to be done to avert loss or suffering, but in every such case it must be assumed that he does so in full confidence that the city will promptly ratify his unauthorized acts, and one who deals with such officer knowing his technical want of power does so in mere expectation that the city will ratify. In any meritorious case, as in an emergency of flood, fire or pestilence, there would be no difficulty in securing ratification if promptly undertaken. If the matter is left to drift for several years until the personnel of the commission has changed and until the gravity of the situation under which the unauthorized contract was made is largely forgotten, there is no help for it. There is a presumption that a meritorious claim will be promptly presented, and in any event the claimant must assert his right within the time fixed by the statute of limitations.

2. Turning next to the third cause of action, it seems clear that the plaintiff can not recover its expenses in changing the

location of its water mains and hydrants to conform to the establishment of the new union station. The plaintiff received its corporate existence and privileges from the state, but these were and are subject to further future regulation, and even subject to revocation and repeal. (Const. art. 12, § 1.) To a limited extent, this is also true as to the privileges granted to the plaintiff by the state's agent, the city of Wichita. (*Anderson v. Fuller et al.*, 51 Fla. 380, 41 South. 684, 6 L. R. A., n. s., 1026.) It was not out of regard for the plaintiff that it was given a franchise to place its mains and hydrants in the streets of Wichita. It was out of regard for the public welfare. Neither was it out of regard for the railroads that permission was granted to erect a union depot. It also was for the public convenience. And when modern invention shall have devised new public conveniences and utilities for the public welfare, the older utilities, like the plaintiff and the union depot, may again have to reorder their establishments to make room for these also. It seems clear that the recipient of any public grant or franchise must be said to have accepted it on this implied understanding. (*The State v. Mo. Pac. Rly. Co.*, 33 Kan. 176, 5 Pac. 772.)

Reasonable changes and improvements in the affairs of public utilities may be ordered at the expense of the public utility company. Thus as a municipality increases its population and business becomes congested, telephone wires may be ordered removed and located elsewhere, railroads may be required to establish new and more expensive crossings, larger terminals, additional connections, etc. (*The State, ex rel., v. Railroad Companies*, 85 Kan. 649, 118 Pac. 872; *City of Emporia v. Railway Co.*, 88 Kan. 611, 129 Pac. 161.) Of course the exercise of such powers must be reasonable, otherwise the courts will withhold or enjoin their enforcement. (*Paola v. Wentz*, 79 Kan. 148, 98 Pac. 775; *City of Emporia v. Railway Co.*, 94 Kan. 718, 147 Pac. 1095; *Telephone Co. v. Utilities Commission*, 97 Kan. 136, 154 Pac. 262.)

It is a thoroughly established proposition that a city has a dual capacity—one as an agency of the state in which it exercises powers purely governmental, legislative and public; the other is proprietary, commercial and quasi-private. (*City of Wichita v. Railroad & Light Co.*, 96 Kan. 606, 608, 152 Pac.

768.) In the exercise of its governmental powers, whether that exercise be wise or foolish, just or unjust, it is never liable thereon in the absence of a statute imposing such liability. Of course in its other capacity, the proprietary, commercial and quasi-private one, it may be subjected to liabilities and judgments like ordinary private corporations and individuals. Nor can there be any doubt that the city of Wichita was exercising its purely governmental functions when it ordered the plaintiff to change the location of its water mains and hydrants. In this respect the city is not liable for the expenses of the plaintiff incurred in obedience to the city's commands. (*Edson v. Olathe,* 81 Kan. 328, 105 Pac. 521, 36 L. R. A., n. s., 861; *Fire Insurance Co. v. Village of Keeseville,* 148 N. Y. 46, 42 N. E. 405, 30 L. R. A. 660, 51 Am. St. Rep. 667; Pond, Public Utilities, §§ 3, 4, and cases cited.)

The decided cases go so far as to say that a city can not bargain away its powers to subject the grantees of franchises to further regulation and control as future public necessities may require. (*Edson v. Olathe,* supra; *Crowder et al. v. The Town of Sullivan et al.,* 128 Ind. 486, 28 N. E. 94, 13 L. R. A. 647, *Snouffer v. C. R. & M. City R'y Co.,* 118 Iowa, 287, 92 N. W. 79. See, also, Note, 6 L. R. A., n. s., 1026.)

3. Turning now briefly to the plaintiff's grievance that it was not permitted to recover for the water used in wagons to flush the streets. Viewing this question strictly, the plaintiff's contention is technically correct. In consideration of the franchise grant the payment of a stipulated hydrant rental, the city now pays about $25,000 per annum to the plaintiff. The ordinance granting the franchise provides for the use of the hydrants for fires, etc., and for flushing and washing the sewers and gutters, and it provides that "not more than two hydrants shall be opened at any one time nor oftener than twice in any one week, nor longer than two hours at any one time, nor discharge through any orifice greater than one and one-half inches." It must be conceded that the furnishing of water for the city's flushing wagons does not come within the terms of this ordinance, and it was technical error to submit the question to the jury whether this use of flushing wagons was within the terms of the ordinance. It may be that the use of

flushing wagons is the modern and better way to do this work, but the city should pay for the water thus used if it involves any excess of water over the old way prescribed by the ordinance. But since it can not be presumed and the facts are wanting to show whether the new method of flushing required more water than the old, the plaintiff failed to establish this cause of action. We need do no more than suggest this as an equitable consideration in any future dealings between the water company and the city in the use of these flushing wagons.

4. Yet another error is presented. The plaintiff objected to three of the jurors on the ground that they were residents and taxpayers of Wichita. This is no longer an absolute disqualification. (Laws 1913, ch. 236) although such juror may be examined on his *voir dire* to determine his impartiality. Nothing was shown here, however, that the challenged jurors would hesitate to do their duty notwithstanding their slight and inconsequential interest as taxpayers in the outcome of the lawsuit.

The judgment is affirmed.