No. 28,110.

THE STATE OF KANSAS, ex rel. THE PUBLIC SERVICE COMMISSION R. M. PICKLER, CLARENCE SMITH, JOHN H. CRAWFORD, W. B. DALTON and W. C. MILLAR, as Members of said Commission, M. J. HEALY, as Attorney of said Commission, and WILLIAM A. SMITH, as Attorney-general, etc., *Plaintiffs,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, THE MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, THE MISSOURI PACIFIC RAILROAD COMPANY, THE ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY and THE UNION PACIFIC RAILROAD COMPANY, *Defendants.*

(264 Pac. 1056.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Regulation by Public Service Commission—Indefinite Orders—Mandamus.* Where orders of the public service commission are so indefinite and wanting in precision that the railroad companies cannot ascertain therefrom what is specifically required of them, mandamus will not issue to enforce obedience thereto.

2. SAME—*Regulation of System of Manual Signals—Necessity of Showing Improved System.* An order of the public service commission requiring the railroad companies doing business in this state to promulgate a new and more efficient system of manual signals for operating their long freight trains

Mandamus, 38 C. J. p. 814 n. 51.

cannot be enforced by mandamus where no showing was made that a better system had been devised.

3. SAME—*Regulation of Brake System—Necessity of Showing Improved System.* A similar order of the commission pertaining to the improvement of railway air- and power-brake systems cannot be enforced by mandamus for the reason outlined in section 2 of the syllabus.

4. SAME. Whether mandamus should issue to enforce orders of the public service commission regulating manual signals and air or power brakes in the operation of railway freight trains exclusively engaged in interstate commerce, if such orders were definite and practicable, noted but not decided.

Original proceeding in mandamus. Opinion filed March 10, 1928. Writ denied.

*William A. Smith,* attorney-general, *M. J. Healy, John M. Kinkel* and *C. B. Randall,* all of Topeka, for the plaintiffs.

*W. W. Brown, C. E. Pile,* both of Parsons, *W. P. Waggener,* of Atchison, *W. F. Lilleston,* of Wichita, *William R. Smith, Luther Burns* and *T. M. Lillard,* all of Topeka, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: The state by its proper officers invokes the original jurisdiction of this court to compel the railway companies doing business in Kansas to put into effect certain orders prescribed by the public service commission relating to manual signals to be used by train crews and relating to the air- or power-brake system.

The defense of the railway companies is predicated on two propositions, (*a*) that the orders of the commission are too indefinite and wanting in precision to be obeyed, and (*b*) that the orders pertain exclusively to interstate commerce in a field already occupied by federal authority and beyond the jurisdiction of the state commission.

Briefly the orders of the commission sought to be enforced had their inception in complaints lodged with the commission by two organizations of railway workmen, the Brotherhood of Railroad Trainmen and the Brotherhood of Locomotive Firemen and Enginemen, charging that the rules, regulations and practices governing the handling and operation of trains in this state subject the train crews to undue and unreasonable hazard and cause them to incur greater liability to injury in body, health and welfare than just and reasonable rules, regulations and practices would do. One practice particularly complained of was the operation of longer freight trains than could be safely handled, to the needless peril of operatives, and

likewise detrimental to the patrons of the railways and to the general public.

Pursuant to these complaints the public service commission held extended hearings, examined many witnesses, and eventually promulgated an order, incorporating therein certain recitals of the testimony, followed by certain findings of fact, which, in part, read:

### "FINDINGS OF FACT.

"I. That the same rules governing the receiving and giving of signals by train employees are now in effect as have been used by respondents for many years; that although, generally speaking, the length of trains has gradually increased during the past several years, no approved material change as to methods of signaling has been made by respondents; that respondents' employees are obliged, under penalty of being disciplined or discharged, to observe *all* existing and effective rules relating to signaling as well as to other phases of train operation. . . .

"II. As the length of trains increases the more difficult it becomes to correctly interpret manual signals. It is frequently impossible for the engineer to see and correctly interpret the manual signal of a conductor or brakeman given in the daytime from the rear of a freight train containing over seventy-five to one hundred cars, depending upon weather conditions affecting visibility. Other methods of signaling should therefore be devised and provided for in the rules of respondent companies which will permit reasonable observance by the employees. . . .

"IV. The necessity for additional brake power naturally increases with the increase in train lengths. Freight trains operating in Kansas usually are supplied with air-brake systems. . . . The increase in efficiency of air brakes has not kept pace with the increase in efficiency of operation of trains generally, the ability of locomotives to pull larger and heavier loads, nor with the increase in standard trackage and roadbeds. The more cars in a freight train the more danger there is to employees and others riding upon such train in case of failure of air brakes to function in emergencies or when trains break in two, which automatically sets the brakes. . . . Respondents seem to recognize this, and are now and have for some time been coöperating with the interstate commerce commission in a series of studies and tests which seek to improve the efficiency of the air-brake system on freight and passenger trains. . . .

"VII. It is impracticable to direct that trains engaged in interstate commerce should, when arriving at the Kansas state line, divide into two or more portions, each portion to be attached to an engine and caboose and manned with sufficient employees to conduct it as a train across the state. To do so would not be in the interest of economy. Locomotives, bridges and tracks have been constructed and equipped for the purpose of hauling larger and heavier loads, thus decreasing materially the cost of operation. Economy in operation of trains, consistent with efficiency, is not only encouraged but demanded by state and national regulatory bodies. The employment of addi-

State, *ex rel.,* v. Atchison, T. & S. F. Rly. Co.

tional men in train service invites additional hazard to men, in that as the number of employees is increased the possibility of injury to a greater number is increased. The operation of a greater number of trains would perforce increase the hazard to the public at large at grade crossings, and accidents of this character constitute a large per cent of the serious railroad accidents of to-day . . . .

"VIII. The evidence introduced herein does not, by a preponderance thereof, show that accidents to employees, incurred by reason of operation of trains in Kansas, have unduly increased during the past few years solely because of the increase in length of trains. Neither has it been shown that accidents to passengers riding on such long trains have ·increased. But the testimony is sufficiently controlling to warrant the commission in finding that if the air brakes on such trains were properly conditioned and capable of being efficiently operated, there would be less danger of accidents. As the length of the train is increased, it follows that if faulty connections in air-brake systems exist, the difference between air pressure on the engine and the caboose is likewise necessarily increased. As heretofore found, this situation is the subject of inquiry and study by the interstate commerce commission and should be promptly remedied. It is the duty of respondents to be on the alert at all times to initiate and provide such improvements in the operation of trains as will reduce the danger of accidents to the minimum.

"IX. Practically all of the trains operated by respondents in Kansas are engaged to some extent in interstate commerce. The commission recognizes that it has no jurisdiction or authority to issue any order that would cast an undue burden upon such commerce. . . .

"ORDER.

"It is, therefore, . . . by the commission, considered and ordered: That the respondent railroad companies, . . . be, and they are hereby, ordered and directed *to promulgate, publish and make effective, within ninety days from the date hereof, rules and regulations in relation to the giving and receiving of manual signals necessary and proper for successful and efficient train operation, the same to be of such character as will be possible of free and reasonable observance by their employees,* having due regard for length of trains operated, weather and atmospheric conditions, all as enumerated in the findings herein;

"That said respondent railroad companies proceed at once *to bring the air- or power-brake systems in use upon their freight trains to the highest possible standard of safety and efficiency* at the earliest possible date;

"That efficiency in air or power brakes be maintained at all times upon the trains operated by respondent railroad companies within the state of Kansas in keeping with the requirements and findings that have been hereinbefore made, or that have been or may hereafter be made by the interstate commerce commission; and that improvements and betterments in said air- or power-brake systems be initiated and made from time to time in keeping with the increased need therefor, caused by the operation of longer trains, or other new or changed operating conditions."

The italicized portions of the foregoing constitute the orders of the commission which this court is asked to enforce by mandamus.

Laying presently to one side the question whether these orders are invalid because they deal exclusively with the operation of interstate freight trains, defendants interpose a practical objection to them in that they are too indefinite to be enforced by mandamus. This court does not hesitate to enforce specific and lawful orders of the commission. The statutes of this state and the decisions of this court have progressed a long way, indeed, since the decisions in *State, ex rel., v. K. C. Rld. Co.,* 47 Kan. 497, 28 Pac. 208, and *State, ex rel., v. Mo. Pac. Rly. Co.,* 55 Kan. 708, 41 Pac. 964, where it was held that orders of the state board of railway commissioners for the repair and improvement of railway tracks, and to operate a daily passenger train on a branch railroad, were advisory only and could not be specifically enforced by mandamus. At the behest of the state commission our court has issued its writ of mandamus to compel a railway company to give adequate passenger train service (*State, ex rel., v. Railway Co.,* 76 Kan. 467, 92 Pac. 606; *Mo. Pac. Ry. Co. v. Kansas,* 216 U. S. 262); to compel an interurban railway company to construct a subway for its railway under a network of tracks of another railroad (*State v. Railway Co.,* 81 Kan. 430, 105 Pac. 704); to compel two railroad companies to construct a switch track to connect their rail lines (*State, ex rel., v. Railroad Companies,* 85 Kan. 649, 118 Pac. 872); to compel a telephone company to restore telephone service abandoned without consent of the state commission (*State, ex rel., v. Telephone Co.,* 112 Kan. 701, 212 Pac. 902). So, too, orders of the state commission requiring a railway company to construct freight depots and provide terminal facilities have been upheld (*Railway Co. v. Railway Commissioners,* 85 Kan. 229, 116 Pac. 869); also orders of the commission requiring the installation and experimental use of a certain novel device for controlling pressure in the lines of a gas distributing company (*City of Winfield v. Court of Industrial Relations,* 111 Kan. 580, 207 Pac. 813); and nothing is more common than our judgments requiring railroads to perform corporate duties clearly defined by general principles of law, by statute, or even by valid city ordinance. (*Larabee v. Railway Co.,* 74 Kan. 808, 88 Pac. 72; *City of Emporia v. Railway Co.,* 88 Kan. 611, 129 Pac. 187; *City of Iola v. Railway Co.,* 97 Kan. 242, 155 Pac. 45; *Atchison, T. & S. F. Rly. Co. v. State Highway Commission,* 123 Kan. 576, 255 Pac. 966.)

State, ex rel., v. Atchison, T. & S. F. Rly. Co.

Citation of cases where this court has upheld and enforced orders of the state commission and similar official boards and governmental agencies might be indefinitely extended; but in all of them it will be found that the order or duty sought to be enforced was clearly defined so that the defendant whose obedience was thus constrained could know and clearly understand what it was commanded to do, and so clearly defined, also, that this court would have no difficulty in ascertaining, upon the return of our peremptory writ, whether complete and straightforward compliance with our mandate had been rendered. If the order or duty is not definite and certain, mandamus will not issue. Thus in the early case of *State v. Mo. Pac. Rly. Co.,* 33 Kan. 176, 5 Pac. 772, this court held that by ordinance a city might lawfully impose upon railroads within its corporate limits the duty to erect a viaduct for the safety of the public, and obedience thereto could be enforced by mandamus, yet in that case mandamus was denied because the ordinance was too vague and indefinite in its terms, and because it did not appear how the railway companies could obey the ordinance without violating certain provisions of statutes.

This ruling is in accord with the decisions in other jurisdictions which have had to deal with this topic. Thus in *Ross et al. v. Butler et al.,* 10 N. Y. S. 444, it was held that attachment of the person for disobedience of an order in general terms to pay money to creditors would not issue when the sums to be paid were not certain. The court said:

"If there is one thing which is well settled in reference to the power of the court to enforce by attachment its judgment or decree, it is that such judgment or decree shall be definite and certain; that there shall be no opportunity for ambiguity, but that the party proceeded against is to be adjudged to do a certain specific act. . . . The appellant has not been directed to do any specific thing, and, if a commitment were issued upon such an order, it would be impossible for the sheriff to determine when the appellant had conformed to its requirements. It is absolutely clear that a party cannot be adjudged to be in contempt without definitely stating what he shall do in order to purge himself of the contempt. There is no such statement in this case." (pp. 444, 445.)

In *People, ex rel. City of Niagara Falls, v. New York Cent. & H. R. R. Co.,* 52 N. Y. S. 234, mandamus to compel a railway company to carry a street over railway tracks was refused because the state board of railroad commissioners had not theretofore determined how the work was to be done.

In *People v. Interborough Rapid Transit Co.*, 183 N. Y. S'. 864, mandamus was sought to compel a transit company to comply with an order issued by the transit construction commissioner requiring the defendant to make such changes in its equipment, third rails, and station platforms "as may be necessary" to allow the cars of another municipal railway corporation to use its tracks. The writ was denied for two reasons, one being that the order of the commissioner was too indefinite to be enforceable. The court said:

"This order is very indefinite. It does not point out what changes are to be made. It does not recite any reason why the structural equipment, including third rails and station platforms, must be radically altered merely for the purpose of allowing another company to run its cars over the tracks. This order leaves a wide discretion somewhere." (p. 865.)

Other instructive cases to the same effect are: *Burlington & Colo. R. Co. v. People*, 20 Colo. App. 181; *State, ex rel. Ellis, v. A. C. L. R. R. Co.*, 53 Fla. 650, 13 L. R. A., n. s., 320; *Seward v. D. & R. G.*, 17 N. M. 557, 46 L. R. A., n. s., 242.

In the last quarter of a century the use of mandamus to enforce the performance of an official or corporate duty has been greatly liberalized, and it could not be taken for granted that this court would follow the strict rule relating to its issue in some other jurisdictions, and even in some of the cases cited above we might have found the corporate duty required by statute, city ordinance, or by order of some official commission, sufficiently clear to be enforced by mandamus, where that relief was denied in some of the cases. But surely there can be no debate over the proposition that mandamus should not issue to compel a railway company to *invent, design* or *discover* a more efficient system of train signaling than that in present use, and obviously such invention or discovery is necessary before it could be adopted and used in railway freight trains with the aid of mandamus or otherwise. In the case of *City of Winfield v. Court of Industrial Relations*, supra, where an order of the state commission to install and use a novel device for reducing gas pressure was upheld, the device had been invented, it was available; the order for its experimental use was practicable and therefore it could be obeyed. But so far as the record shows, no manual or other train-signal system better than the present system has yet been invented or devised, so it is altogether out of reason to enforce this particular order of the commission by mandamus.

And what we have just said about the train signals applies with equal relevancy to the air- and power-brake systems. The state commission's own summary of the evidence, together with its findings of fact, pursuant to which it formulated its order directing the railway companies to bring their air- and power-brake systems up to the highest possible state of efficiency takes cognizance of the fact that no better system of brakes has yet been invented, although the subject has long engrossed the solicitous concern of the interstate commerce commission.

The other matters urged upon our attention in the briefs of counsel have been carefully perused. The state's brief does not actually contend that the commission's orders are definite and certain enough to be specifically enforced by mandamus. Apparently it merely strives for a moral victory on its two main points—that the signal system for operating trains and air- and power-brake systems have not kept pace with railroad progress in other lines, and particularly with respect to the stupendous length of modern interstate freight trains. With such matters this court has nothing to do.

The conclusion just reached, that the orders of the public service commission are too indefinite to be enforced by mandamus, renders it quite unnecessary to consider the other objection raised by the defendants—that the orders of the commission can only relate to long freight trains exclusively engaged in interstate traffic, a matter over which the state board had no jurisdiction.

The writ of mandamus is denied and judgment will be entered for defendants.