L. J. CRANS v. JOHN FRANCIS, *Treasurer of Kansas.*

1. MANDAMUS; *Motion to Quash Answer, Nature of.* Pleadings in mandamus are, by the code, to be construed as pleadings in an ordinary civil action. A motion to quash the answer, if such a motion is proper, is not equivalent to a motion to make the answer more specific and definite, or to strike out a part of it as redundant and superfluous, or to compel an election between different defenses; but it is a challenge of the substance of the defense or defenses presented, is equivalent to a demurrer, or a motion for judgment over the answer, and can only be sustained when in fact the answer contains no defense to the plaintiff's cause of action.

2. APPRAISEMENT, *before Sale of Lands.* Under the act of February 23, 1866, providing for the sale of certain lands, as amended by ch. 82 of

the laws of 1869, the agent of the state had no authority to sell any lands until after the appraisement provided for by said chapter.

3. INJUNCTION AGAINST OFFICER; *Force of Decree, Extent of.* Where an action is brought against the incumbent of an office, to restrain the doing of an official act, and a decree so restraining is entered, the mere language of the decree will not always determine whether the injunction binds simply the individual or the office. If from the pleadings and the entire record it appears that the ground of attack is a personal disability of the officer, then the injunction will bind him alone, and not a subsequent incumbent of the office; but if in like manner it appears that the only ground of attack is the illegality of the official act, then the decree will bind the office, although only the officer is personally named in the decree.

*Original Proceedings in Mandamus.*

ACTION brought in this court by *L. J. Crans* against *John Francis*, as state treasurer. The plaintiff based his action upon a certain contract of which the following is a copy :

"TOPEKA, KAS., January —, 1880.

"This is to certify that, in pursuance of law, L. J. Crans, of Cloud county, state of Kansas, on this date purchased of the state land agent the north half of section ten (10), township six (6), south, of range (4), west, containing, according to the U. S. survey, three hundred and twenty acres, at the rate of one dollar and twenty-five cents per acre, amounting to the sum of four hundred dollars ; and upon payment of said sum of four hundred dollars to the state treasurer, and his receipt indorsed hereon as provided by law, then said L. J. Crans shall be entitled to a patent to the above-described land: provided, however, that if said sum of four hundred dollars be not paid to the state treasurer within thirty days from this date, this certificate of purchase shall be void, and of no legal force whatever.　　F. H. DRENNING,

*State Land Agent.*"

The plaintiff alleged, that on the 23d of January, 1880, he presented this certificate of purchase, and therewith tendered the $400 due thereon to the defendant, as treasurer of state, and demanded a receipt for the money, but that the defendant refused to receive it and give the receipt asked for. April 16, 1880, an alternative writ was issued and directed to the defendant, commanding him to receive and receipt for the

money tendered as aforesaid, or that by May 10, 1880, he show cause, etc. The defendant duly filed his answer, which commenced with a general denial, (except as to certain admissions expressly made,) and averred that, on August 9, 1873, in the district court of Shawnee county, in an action then and therein pending, wherein the state of Kansas was plaintiff, and Richard D. Mobley, the St. Joseph & Denver City railroad company, the Missouri River, Ft. Scott & Gulf railroad company, the Missouri, Kansas & Texas railroad company, and the Leavenworth, Lawrence & Galveston railroad company, were defendants, the said defendant, Richard D. Mobley, was sued therein, as the agent, under an act of the legislature of the state of Kansas, entitled "An act providing for the sale of public lands to aid in the construction of certain railroads," approved February 23, 1866, and the other defendants as the beneficiaries under that act, there was rendered a judgment, of which the following is a copy.:

"And now comes the state of Kansas, by A. L. Williams, attorney general, the said St. Joseph & Denver City railroad company, by its attorney John Doniphan, the Missouri River, Fort Scott & Gulf railroad company, by its attorneys Platt & Blair, the Missouri, Kansas & Texas railroad company, by T. C. Sears, its attorney, and the Leavenworth, Lawrence & Galveston railroad company, by S. O. Thacher, its attorney, and the said railroad companies and each of them having filed an answer disclaiming and denying each for itself any right, title or interest in or to the lands described in plaintiff's petition, or the proceeds thereof, or any further interest in the lands mentioned in an act of congress entitled 'An act to appropriate the proceeds of the public lands, and to grant preëmption rights,' approved September 4th, 1841, and also mentioned and described in an act of the legislature of the state of Kansas entitled 'An act providing for the sale of public lands to aid in the construction of certain railroads,' approved February 23, 1866; and the said answer not being controverted, and the said Richard D. Mobley, being duly served with a summons in this cause, not answering herein, but making default, it is therefore ordered and adjudged that the injunction heretofore granted in this action be and the same is hereby

made perpetual; and the said Richard D. Mobley is hereby perpetually enjoined from selling or offering to sell any of the following-described lands, situated in the state of Kansas, to wit: . . . or any lands mentioned in the act of congress or the act of the legislature of the state of Kansas herein and heretofore referred to, and from paying over to said railroad companies or either of them the proceeds of the sale of any such land now in his possession, or which may hereafter come into his hands. The said railroad companies and each of them are perpetually enjoined from applying for or receiving any such proceeds; and it is further considered that the plaintiff pay all costs herein," etc.

The answer further averred, that said judgment had from that time been continuously in full force; that by virtue thereof the aforesaid railroad companies had been divested of all interest in said lands; that in consequence thereof the governor of Kansas had no power to appoint the said F. H. Drenning agent as aforesaid, and that he had never qualified as such. The defendant, for a further answer, said, that although Drenning was duly appointed as such agent, yet that at the time he made the sale of the land in question, and executed the voucher therefor, his term of office had expired under sec. 2, art. 15 of the constitution of the state of Kansas, and that he had no authority to make the sale and execute the above certificate. The plaintiff filed a motion to quash this answer, on the grounds that the defenses are inconsistent and impertinent. The opinion herein was filed January 5, 1881.

*L. J. Crans*, plaintiff in error, for himself.

*Willard Davis*, attorney general, and *A. B. Jetmore*, for defendant.

The opinion of the court was delivered by

BREWER, J.: This is an original action of mandamus, brought to compel the defendant, as state treasurer, to receive certain moneys, and give a receipt therefor. The allegation is, that the plaintiff made a contract with the agent of the state, appointed under an act of the legislature of date February 23, 1866, for the purchase of a certain tract of land; that he

presented this contract, and the money due under it, to the defendant, and demanded a receipt, and this for the purpose of tendering the receipt to the governor, and obtaining from him a patent. To this application the defendant in due time answered, and plaintiff files a motion to quash this answer, or return to the writ, on the grounds that the defenses are inconsistent and impertinent.

A preliminary question is, as to the scope and effect of a motion to quash; and in this we must be guided by the statute, rather than by the rules which controlled the old common-law proceeding by mandamus. The entire nature of this proceeding is, as we have had occasion heretofore to notice, changed by statute. (*The State, ex rel., v. Jefferson Co.,* 11 Kas. 66.) It is now in its form very like an ordinary action. No other pleadings are allowed than the writ and answer. These pleadings are to be construed and to have the same effect as pleadings in a civil action, and the issues are to be tried and further proceedings had as in a civil action. (Code, § 696.) Under those rules, a motion to quash the answer is a challenge of the substance of such answer. It asks that as a whole it be rejected; in other words, it claims that, construed by the ordinary rules of pleading, it contains no defense. If sustained, it strikes out the entire pleading, and leaves the plaintiff's pleading admitted. It is not in the nature of a motion to make specific and definite, for such a motion implies a defense presented, though imperfectly pleaded; neither is it equivalent to a motion to compel defendant to elect, for such a motion implies the existence of two or more defenses. This motion denies any defense. It is like a motion to strike out the answer as containing no defense, or a motion for judgment over the answer, or a demurrer to the answer. It attacks the substance and not the form, and says that no defense is presented. Strictly, then, if any defense appears in the answer, the motion must be overruled; and if two defenses, even though inconsistent, the same ruling must be made.

A demurrer will not lie on the ground of inconsistent de-

fenses. (*Larimer v. Kelley*, 10 Kas. 298.) Neither will any other objection which merely denies the existence of any defense. Further, if impertinent matter be found in such an answer, a motion to quash must be overruled, providing a sufficient defense be also pleaded. The authorities cited by counsel from the old common-law practice do not obtain. The reasons for this difference are fully stated in the opinion in 11 Kas., *supra*, and need not be here repeated.

The answer commences with a general denial. As there are many facts in and essential to plaintiff's petition which require proof, and are not admitted by a failure to deny under oath, this of itself is a sufficient answer, and compels the overruling of this motion, unless the matters thereafter admitted in the answer of themselves show that plaintiff is entitled to the relief asked. As they do not, we might properly stop here in this opinion, and simply overrule the motion.

Two matters are presented which, however, may be of importance in the further progress of this case, and which, therefore, we shall consider. The petition alleges that the plaintiff contracted with the agent to purchase the land at the appraised value. The answer, besides the general denial, specifically denies that the lands were ever appraised as required by the statute. The original act was silent as to appraisement, and simply provided that no lands should be sold at less than $1.25 per acre; (§ 4.) In 1869 said § 4 was amended so as to read: " Before said agent shall sell any of said lands, each railroad company . . . . shall appoint a commissioner, to be approved by the governor, whose duty it shall be to proceed at once to view, list and appraise said lands, . . . . and said agent shall sell said lands at not less than their value according to such appraisal: *Provided*, however, that such company shall appoint such commissioner within two months from the approval of this act, and said appraisal shall be made within six months." Now such appraisal was a condition precedent to the right to sell. No contract of the agent was of any force until it was made. And if the companies who were the beneficiaries under the

act failed to appoint a commissioner, and no appraisal was in fact made, the right to sell ceased. Nothing could thereafter be done until further action of the legislature. The failure of the companies to act under this amended section did not revive the section as it stood before amendment, for it was in terms repealed, nor did it authorize the agent to proceed and sell as though no such section had been enacted. The appraisal was a condition precedent, and if the condition failed the authority of the agent ceased. He had no general power to act.

Again, the answer alleges that a decree was duly rendered against the predecessor of the present agent and the railroad companies, enjoining further sale of these lands, the payment of the proceeds of any sales to the companies, and the companies from applying for or receiving any such proceeds. A copy of the decretal order or judgment is attached to the answer. The allegation of the answer is, that this decree was rendered in an action against a prior agent who was sued *as the agent*, and the companies who were sued as *the beneficiaries under said act*. The decree reads as though it were against the agent as an individual, and not as an officer. Now the mere language of the decree may not disclose its full scope. This may be determined in a measure by the allegations of the petition and the scope of the issues. If from the whole record it should appear that there was simply a personal attack upon the individual, then a decree enjoining him from selling would be personal only, and would not affect the right of any other or subsequent agent to proceed under the act and sell. But if the attack was alone upon the office, he being made defendant as the only incumbent of the office, and no personal disqualification the ground of relief, then the decree, although nominally only against him, might really bind the office and prevent any subsequent sale by any one. The real scope of the decree can therefore only be determined by an inspection of the whole record. Until that appears, we forbear further comment upon its scope and effect.

The motion to quash will be overruled.

All the Justices concurring.