316

No. 35,246

B. J. HERD, *Appellee*, v. H. W. ESTES, *Appellant*, et al.
(PAUL HARDEN, *Appellee*).

(118 P. 2d 575)

Opinion filed November 8, 1941.

*Robert C. Mayse,* of Ashland, for the appellant.

*Horace H. Rich,* of Coldwater, for appellee *B. J. Herd; Francis C. Price* and *Floyd N. Cossman,* both of Ashland, for appellee Paul Harden.

The opinion of the court was delivered by

SMITH, J.: This was a suit to collect the purchase price of a tractor. It took the form of three causes of action. Judgment was for the plaintiff. Defendant appeals.

The first cause of action stated that plaintiff had made a trade with one Paul Harden whereby plaintiff had become the owner of a certain tractor; that plaintiff had entered into an agreement with defendant whereby defendant had agreed to purchase the Harden tractor and to pay for it by receiving credit for $100 on a used tractor and giving plaintiff a check for $100 dated June 23, 1939, and a mortgage note of $100 dated June 23, 1939, drawing ten percent interest; that plaintiff had made no warranty as to the condition of the tractor and defendant had satisfied himself as to its condition by an interview with Paul Harden; that the tractor had been delivered to defendant; that the defendant had refused to pay the check for $100. Judgment in that cause of action was asked for $100, with interest.

For a second cause of action the petition alleged that defendant had given plaintiff his note in the sum of $100 accompanied by a mortgage on the tractor and that the note was due and unpaid. Judgment was asked in this cause of action for $100 in the amount of the note.

The third cause of action stated that defendant was indebted to

plaintiff for parts sold to him and for labor performed by plaintiff in the amount of $5.20. Judgment was asked in this cause of action for $5.20.

The defendant filed a motion on December 14, 1939, to require plaintiff to elect whether plaintiff's cause of action stated in counts 1 and 2 were based upon the alleged oral contract or upon the written instruments attached to the petition. This motion was overruled. Defendant filed a document which he denominated an answer and counterclaim. This document was in two parts. The first part he called an answer. In it he alleged that on June 23, 1939, Harden was to trade a used Allis tractor for a new tractor; that Harden remained in possession of the Allis tractor with the understanding that he would help sell the Allis tractor by advising any purchaser of its merits. The next paragraph of the answer denied the general allegations of the petition. Defendant then stated that plaintiff and Harden connived to cheat him by means of various representations whereby they caused him to agree to purchase the Allis tractor at a price in excess of its value; that plaintiff and Harden made various representations to him concerning the mechanical repair and usefulness of the tractor; that defendant was deceived by these representations and caused to agree to purchase this Allis tractor and to deliver to plaintiff a Wallis tractor of the value of $100 and to sign the check and note upon which the plaintiff had sued. The answer further alleged that plaintiff told defendant that Paul Harden had told him that defendant was interested in buying the Allis tractor; that defendant had told plaintiff that he owned the Wallis tractor which he was using but that he had a great deal of work to do and if he could secure a better tractor he would consider trading in the Wallis tractor; that he knew nothing about tractors and had to rely on what he was told concerning their value, condition and repair; that plaintiff told defendant he had seen the Allis tractor at work and knew the same to be in first-class condition and would do the work defendant desired done and was worth more than the $300 he asked for it; that plaintiff told defendant Paul Harden was an honest and trustworthy person whom defendant could believe and he would take defendant to Paul Harden and let Harden tell him about the condition of the tractor; that upon such representations defendant went with plaintiff to see Paul Harden on whose farm the tractor was located; and the answer further alleged that Harden had told defendant he had overhauled the Allis tractor and put new sleeves and

pistons and rings and a new water pump and one new drum with new pinions to prevent it from wearing, and everything else which would make it in tiptop shape; that defendant thereupon, relying upon what he had been told by Harden and defendant, and believing the same to be true, signed the check upon which the action was brought. The answer then alleged that defendant delivered to plaintiff his Wallis tractor, relying upon the representation set out heretofore, and that Harden delivered the Allis tractor to defendant; that defendant discovered that the representations of Paul Harden to him were false; that he had been deceived thereby; that the tractor would not crank when a new spark plug was installed therein; that the tractor was not ready to hook onto and go to work; nor would it do the work which plaintiff and Paul Harden stated it would do; that this tractor had not been overhauled, and run only ten or twelve days thereafter; that new sleeves and pistons and rings had not been put in this tractor, as stated; that a new water pump had not been put on this tractor, nor had a new drum with pinions for both drums been put on, and all parts necessary to put this tractor in first-class shape had not been put on it, and that this tractor was not worth $300 when delivered to defendant, and in truth was worth little more than junk prices; that the tractor had remained until the time the answer was filed where Paul Harden had delivered it. The answer further alleged that the check and note were executed without consideration and should be held null and void and that he should have judgment against defendants Paul Harden and B. J. Herd for $100, for the full amount of the tractor, and $85 expended by him for repairs.

In his counterclaim defendant adopted the allegations of his answer and further alleged that on June 23, 1939, he was operating a farm; that the only power to work this farm was a Wallis tractor, which plaintiff and Harden had induced him to trade for the Allis tractor; that when he parted with this tractor he was deprived of machinery to farm his land; that he was on this date using this tractor to list feed on his land and lacked about 15 acres of completing this listing when plaintiff took this tractor away from him upon the pretext that he had an immediate buyer therefor and defendant was caused to delay planting this feed by reason of the alleged facts and circumstances to an unseasonable time when the ground was too dry to mature a feed crop. The answer further alleged that defendant depended on the representation of plaintiff and Paul Harden con-

cerning the serviceable condition of this tractor and that this tractor, without the expenditure of time and money to repair it, was not serviceable for defendant's farming purposes. The counterclaim further stated that defendant was caused to neglect cultivating his feed crop by reason of having no tractor and the feed became weedy and neglected and did not mature as it would have had it been cultivated; that by reason of plaintiff's and Paul Harden's false representations he was deprived of his tractor and caused to neglect the plowing of the 160 acres of other wheat ground until the same had dried out and was unfit to plant to wheat in 1939; that defendant was unable to raise the winter sustenance for his cattle and was caused to dispose of part of his cattle; that he had made various trips to Coldwater and elsewhere to get repairs for this Allis tractor to get it to run; that at various times he offered to return this Allis tractor to plaintiff and demanded his Wallis tractor returned to him, to no avail. The counterclaim asked that Paul Harden be made a party to the action.

The defendant prayed judgment and damages against plaintiff and Paul Harden in the sum of $100 for the actual value of the Wallis tractor; $35 for money paid out for repairs; $370 actual damages to crops, and $300 punitive damages. He further prayed that the check and note sued upon be canceled.

Upon motion of plaintiff, Paul Harden was ordered by the court to be made party defendant, and summons was issued upon this order.

On April 9, 1940, plaintiff filed two separate demurrers: One was directed to the answer and counterclaim of defendant, the other to the counterclaim of defendant. They are each upon the same grounds: (1) for insufficiency, (2) that several causes of action are improperly joined; one for rescission of the contract and the other asking for damages.

On September 8, 1940, the court made an order sustaining the demurrer on the ground that the answer and counterclaim stated several causes of action which were improperly joined. On the same day defendant made an oral motion to cause the suit on the counterclaim to be separated and docketed for trial as against Herd and Harden, independent of the original action. This motion was overruled on the 5th day of September, 1940.

On December 12, 1940, Paul Harden filed his demurrer to the counterclaim of defendant, which demurrer was by the order of the court sustained on February 17, 1941, upon the grounds that the

counterclaim wholly failed to state facts sufficient to constitute a cause of action against Harden and that defendant was without authority in law to proceed against defendant Harden by way of counterclaim and that the court had no jurisdiction to try it.

On January 12, 1941, plaintiff filed his motion for judgment on the pleadings on the ground that on the 5th day of September, 1940, the court sustained plaintiff's demurrer to the answer and counterclaim of defendant on the grounds that the answer and counterclaim stated several causes of action and that defendant was in default, having failed to file any further pleadings.

On February 17, 1941, judgment was rendered upon plaintiff's motion entering judgment for the plaintiff in the amount sued for.

On March 24, 1941, notice of appeal was filed whereby defendant appealed from the judgment sustaining plaintiff's demurrer to defendant's answer and counterclaim on the grounds that the answer and counterclaim contained a misjoinder of causes of action and from the order of September 5, 1940, denying defendant's motion to docket the counterclaim for a separate trial from the order of February 17, 1941, sustaining the demurrer of Harden to the counterclaim of defendant and from the order giving judgment upon the pleadings made on the 17th day of February, 1941.

The trial court sustained these demurrers on the theory the answer pleaded a rescission of the contract while the counterclaim pleaded a general cause of action for damages and that these were so fundamentally different that the joining of them in an answer and counterclaim constituted a misjoinder of causes of action and that this was grounds upon which the demurrer should be sustained. The plaintiff makes the same argument in this court. He cites and relies upon the many authorities where this court has held that an action for rescission of a contract and for damages growing out of the same transaction cannot be joined in the same petition. There is a serious question as to whether the same rule applies to an answer that applies to a petition. The statute states expressly that a petition is demurrable on the ground of misjoinder of causes of action. (See G. S. 1935, 60-705.) This court has never held that an answer is demurrable for that reason. The present code provides that the plaintiff may demur to the answer for insufficiency and that he may demur to one of the defenses set up in the answer and reply to the remainder. (G. S. 1935, 60-717.)

The question of whether or not the plaintiff could raise the question of inconsistency of defenses by means of a demurrer is dealt with by this court in *Larimer v. Kelley*, 10 Kan. 298. In that case the plaintiff had sued the defendant because she had taken some writings in which she claimed they were both interested on account of a contract and caused them to be published without paying plaintiff her share. The answer set up five defenses—first, a general denial; second, a specific denial of any agreement; third, an allegation that at the time of the agreement one defendant was the wife of her codefendant and had no right to make contracts; fourth, that plaintiff was at the same time a married woman and unable to make a contract; fifth, that the agreement was not to be performed within a year and was not in writing. The plaintiff argued that the fifth defense could not be raised because it was inconsistent with the defense of a specific denial of the contract. This court stated that the fifth defense was sufficient and the court said:

"If counsel mean to claim that it is insufficient because contradictory to the second and verified defense, and that contradictory defenses are not tolerated, this answer is complete. Such objection cannot be raised by demurrer. The question on demurrer is whether this defense be sufficient; not whether it contradicts or is inconsistent with some other." (p. 306.)

The decision in that case was followed in *Crans v. Francis, Treas.*, 24 Kan. 750. In that case an action was brought to compel the state treasurer to receive certain moneys for some state land pursuant to a contract. In the answer of the defendant he alleged first a general denial and then set out certain proceedings in the district court of Shawnee county with reference to public lands and to a judgment that had been obtained in those proceedings, and also alleged that on account of these proceedings the governor of Kansas had no power to appoint the land agent who had made the contract upon which suit was brought. The answer further alleged that although the agent was duly appointed, at the time he made the contract in question, his term had expired. The plaintiff filed a motion to quash this answer on the ground that the defenses were inconsistent and impertinent. This court first pointed out that a motion to quash in such cases was the same as a demurrer and then said:

"Under those rules, a motion to quash the answer is a challenge of the substance of such answer. It asks that as a whole it be rejected; in other words, it claims that, construed by the ordinary rules of pleading, it contains no defense. If sustained, it strikes out the entire pleading, and leaves the plaintiff's

pleading admitted. It is not in the nature of a motion to make specific and definite, for such a motion implies a defense presented, though imperfectly pleaded; neither is it equivalent to a motion to compel defendant to elect, for such a motion implies the existence of two or more defenses. This motion denies any defense. It is like a motion to strike out the answer as containing no defense, or a motion for judgment over the answer, or a demurrer to the answer. It attacks the substance, and not the form, and says that no defense is presented. Strictly, then, if any defense appears in the answer, the motion must be overruled; and if two defenses, even though inconsistent, the same ruling must be made. A demurrer will not lie on the ground of inconsistent defenses." (p. 754.)

In *Fetzer v. Williams*, 80 Kan. 554, 103 Pac. 77, plaintiff had sued defendant to recover the unpaid balace due for some farm machinery. The defendant pleaded that he had been damaged by a breach of warranty in a larger amount than the sum sued for. This answer was attacked by a general demurrer on the ground that some of its averments were based on the theory that the defendants had rescinded the contract of purchase and were necessarily inconsistent with others which had assumed that he had chosen to affirm it. This court said:

"Inconsistency in the allegations of a pleading, however, is not a defect which can be reached by demurrer." (p. 555.)

The rule is laid down in 49 C. J. 367, as follows:

"As a general rule, with respect to matters remediable by motion, demurrer is not available to take the place of the motion."

In the cases that deal with the commingling of theories in the petition and hold that such commingling makes the petition demurrable there has always been the added feature that the defendant first filed motions to compel the plaintiff to elect upon what theory he chose to rely or to make definite and certain and these motions were resisted with the result that the cases finally reached this court as in the case of *Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965, with the petition based on commingling two inconsistent theories so that it was impossible for this court or any court to say upon what theory the plaintiff was seeking to recover.

The situation here is different. No preliminary motions were directed at this answer at all.

We have here the additional question as to whether the demurrer should have been sustained to the counterclaim of the defendant. The record is not as clear as it might be, but both parties argue the

case here as though the trial court had overruled the demurrer of plaintiff to the answer and counterclaim on the ground of insufficiency but had sustained it only upon the ground of misjoinder of causes. In that case the rule heretofore quoted applies with equal force to the counterclaim.

There remains then the question of whether the court erred in sustaining the demurrer of defendant Harden as to the counterclaim.

Harden argues that this demurrer was correctly sustained because the counterclaim failed to state sufficient facts to constitute a cause of action against him and that defendant was without authority in law to proceed against him. He stresses in his argument, however, that the demurrer was correctly sustained because of the commingling of the theory of rescission and of an action for damages. The pleading is called a counterclaim by defendant. It is more nearly, however, a cross petition. G. S. 1935, 60-705, provides that a petition is demurrable where several causes of action are improperly joined. The case of a cross petition is somewhat analogous to that of a petition, and if it should appear that two causes of action were misjoined a demurrer would be the proper means of challenging it. However, it is not so clear in this case that two causes of action are improperly joined in the counterclaim that it could be challenged by a demurrer without a motion being filed to make definite and certain or to cause the defendant to elect. No such motions were filed here. On that account we hold that the court erred in sustaining the demurrer of Harden to the cross petition.

The judgment of the trial court is reversed with directions to proceed with the trial of the action.

HARVEY, J., not sitting.